UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 21- 330 (RBK) |
| | : | |
| v. | : | 18 U.S.C. §§ 1349, 371 |
| | : | |
| ROCCO CAMMALLERI | : | <u>INFORMATION</u> |
| | : | |

The defendant having waived in open court prosecution by indictment,

the Acting United States Attorney for the District of New Jersey charges:

<u>COUNT 1</u>
**(Conspiracy to Commit Health Care Fraud)**

1.      At all times relevant to this Information:

        a.      Defendant ROCCO CAMMALLERI was a resident of New Jersey.

        b.      Flex Health LLC was a New Jersey Limited Liability Company

owned and controlled by defendant ROCCO CAMMALLERI.

        c.      In New Jersey, the Bergen County Prescription Benefits Plan

("BCPBP") offered medical and prescription drug coverage to qualified local

government public employees and eligible dependents.  BCPBP was a "health care

benefit program" that affected commerce as defined in 18 U.S.C. § 24(b).

        d.      Pharmacy Benefits Administrator provided pharmacy benefit

management services for BCPBP beneficiaries pursuant to an agreement with

Bergen County.  Pharmacy Benefits Administrator also provided pharmacy benefit

management services for beneficiaries of other insurance plans.  Pharmacy Benefits

Administrator adjudicated claims for reimbursement from pharmacies and paid

pharmacies for valid claims.  Pharmacy Benefits Administrator then billed Bergen County based on the amount paid to the pharmacies for claims on behalf of BCPBP beneficiaries.  Pharmacy Benefits Administrator was a "health care benefit program" that affected commerce as defined in 18 U.S.C. § 24(b).

       e.     Medical Practice 1 was a medical practice located in Newark, New Jersey that was owned and operated by Individual 1.

       f.     Compounding Pharmacy 1 and Compounding Pharmacy 2 were out-of-state pharmacies that prepared compounded medications. Compounding Pharmacy 1 and Compounding Pharmacy 2 received prescriptions for compounded medications from medical practices in New Jersey, including Medical Practice 1. Compounding Pharmacy 1 and Compounding Pharmacy 2 would fill prescriptions by preparing the compound medications and mailing them to individuals.  Compounding Pharmacy 1 and Compounding Pharmacy 2 billed Pharmacy Benefits Administrator for the prescriptions and received payment from Pharmacy Benefits Administrator.

       g.     Compounding Pharmacy 3 and Compounding Pharmacy 4 were pharmacies located within New Jersey that prepared compounded medications. Compounding Pharmacy 3 and Compounding Pharmacy 4 received prescriptions for compounded medications from medical practices in New Jersey, including Medical Practice 1.  Compounding Pharmacy 3 and Compounding Pharmacy 4 filled prescriptions by preparing the compound medications and mailing or delivering them to individuals.  Compounding Pharmacy 3 and Compounding Pharmacy 4 billed

Pharmacy Benefits Administrator for the prescriptions and received payment from Pharmacy Benefits Administrator.

      h.    Company 1 was a New Jersey-based company owned and operated by Individual 2, which marketed compound prescription medications and received a percentage of the amount that the Compounding Pharmacies received from Pharmacy Benefits Administrator for prescriptions originated by Individual 2 and others recruited to Company 1.

      2.    At all times relevant to this Information:

      a.    In general, compounding was a practice in which a licensed pharmacist combined, mixed, or altered ingredients of one or more drugs in response to a prescription to create a medication tailored to the medical needs of an individual patient.  Compounded drugs were not approved by the United States Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

      b.    Compounded drugs could be appropriately prescribed by a physician when an FDA-approved medication did not meet the health needs of a particular patient.  For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the ingredient that triggers the allergic reaction.

3.     From in or about September 2015 through in or about April 2017, in the District of New Jersey, and elsewhere, defendant

ROCCO CAMMALLERI

did knowingly and willfully conspire and agree with others to execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

## Object of the Conspiracy

4.     It was the object of the conspiracy for defendant ROCCO CAMMALLERI and others to unlawfully enrich themselves by causing the submission of false and fraudulent insurance claims to Pharmacy Benefits Administrator for medically unnecessary compounded prescription medications and by receiving a percentage of the amount paid for those compounded prescription medications by Pharmacy Benefits Administrator.

## Manner and Means of the Conspiracy

5.     It was part of the conspiracy that Individual 2 and others learned that, for beneficiaries of BCPBP and certain other insurance plans, Pharmacy Benefits Administrator would reimburse up to thousands of dollars for one individual's one-month supply of certain prescription compound medications, including vitamin

combinations, pain creams, scar creams, libido creams, migraine creams, and anti-fungal creams.

6.     It was further part of the conspiracy that Individual 2 recruited defendant ROCCO CAMMALLERI to agree to receive medically unnecessary compound prescription medications because defendant ROCCO CAMMALLERI was a BCPBP beneficiary whose insurance would cover the expensive compound medications.

7.     It was further part of the conspiracy that Individual 2 provided defendant ROCCO CAMMALLERI with blank prescription forms for compound medications and directed defendant ROCCO CAMMALLERI to go see Individual 1 at Medical Practice 1 for the purpose of obtaining Individual 1's signature and authorization for the prescriptions.

8.     It was further part of the conspiracy that defendant ROCCO CAMMALLERI went to Medical Practice 1 and received prescriptions authorized by Individual 1 for several medically unnecessary compound prescription medications, including pain creams, scar creams, libido creams, migraine creams, and vitamins.

9.     It was further part of the conspiracy that Individual 2, through Company 1, paid defendant ROCCO CAMMALLERI, through payments to Flex Health LLC, for the medically unnecessary compound prescription medications he agreed to receive.

10.     It was further part of the conspiracy that Individual 2, through Company 1, paid defendant ROCCO CAMMALLERI, through payments to Flex

Health LLC, to recruit other BCPBP beneficiaries to agree to receive medically unnecessary compound prescription medications.

11.    It was further part of the conspiracy that defendant ROCCO CAMMALLERI—who had no medical or sales training or background—recruited other BCPBP beneficiaries to receive medically unnecessary compound prescription medications.

12.    It was further part of the conspiracy that defendant ROCCO CAMMALLERI and Individual 2 directed other BCPBP beneficiaries to go see Individual 1 at Medical Practice 1 for the purpose of obtaining Individual 1's signature and authorization for the compound medication prescriptions.

13.    It was further part of the conspiracy that Individual 2, through Company 1, paid defendant ROCCO CAMMALLERI and the BCPBP beneficiaries recruited by defendant ROCCO CAMMALLERI for the medically unnecessary compound medications they arranged or agreed to receive.

14.    It was further part of the conspiracy that defendant ROCCO CAMMALLERI and the individuals he recruited into the scheme caused the payment by Pharmacy Benefits Administrator of approximately $2,981,688.52 in fraudulent claims for compounded medications.

15.    It was further part of the conspiracy that defendant ROCCO CAMMALLERI received approximately $175,467.05 in payments for causing the submission of false and fraudulent claims for compounded medications.

In violation of Title 18, United States Code, Section 1349.

## COUNT 2
## (Conspiracy to Corruptly Endeavor to Obstruct Justice)

16.    Paragraphs 1 through 2 and 4 through 15 of Count 1 of this Information are hereby realleged and incorporated as though set forth in full herein.

17.    In or about June 2017, federal agents from the Internal Revenue Service—Criminal Investigations ("IRS-CI"), Federal Bureau of Investigation ("FBI"), and United States Department of Labor Office of Inspector General ("DOL-OIG") initiated an investigation into compound prescription medications associated with Company 1 and Individual 2.

18.    As part of the investigation, in or about June 2017 a grand jury subpoena was issued to Company 1 and served on Individual 2 seeking records concerning Company 1's operations and involvement in compound medication marketing.

19.    As part of the investigation, federal agents sought to interview individuals with knowledge of the subject matter of the investigation.

20.    From in or about June 2017 through in or about March 2018, in the District of New Jersey, and elsewhere, defendant

ROCCO CAMMALLERI

Individual 2, and others did knowingly and intentionally conspire and agree with each other and others to commit offenses against the United States, that is, to corruptly endeavor to impede or obstruct the due administration of justice, contrary to Title 18, United States Code, Section 1503.

## Object of the Conspiracy

21.     It was the object of the conspiracy for defendant ROCCO CAMMALLERI, Individual 2, and others to corruptly endeavor to obstruct and impede the due administration of justice by providing false information to federal agents and the grand jury.

## Manner and Means of the Conspiracy

22.     It was part of the conspiracy that, after Individual 2 received the grand jury subpoena directed to Company 1, Individual 2 contacted defendant ROCCO CAMMALLERI numerous times for the purpose of influencing defendant ROCCO CAMMALLERI's provision of information in the ongoing investigation.

23.     It was further part of the conspiracy that defendant ROCCO CAMMALLERI and Individual 2 met in person and agreed to obstruct the administration of justice by providing false information and testimony to federal agents and the grand jury.

## Overt Acts:

24.     In furtherance of the conspiracy and in order to effectuate the object of the conspiracy, defendant ROCCO CAMMALLERI committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

a.     Defendant ROCCO CAMMALLERI and Individual 2 met in person, at which time Individual 2 directed defendant ROCCO CAMMALLERI to instruct others to provide false information during the investigation—that is, to say that they were solely paid to recruit certain individuals to receive compound

medications that they did not in fact recruit to do so, and to falsely state that they were not paid to receive medically unnecessary compound medications themselves.

      b.      Defendant ROCCO CAMMALLERI met with and gave Individual 3 a document falsely depicting a sales recruitment diagram for the compound prescription medications that he and Individual 2 wanted Individual 3 to convey to law enforcement in an attempt to thwart the investigation.

In violation of Title 18, United States Code, Section 371.

## **FORFEITURE ALLEGATION**

1.      As a result of committing the offense alleged in Count 1 of this Information, defendant ROCCO CAMMALLERI shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense alleged in Count 1, including but not limited to a forfeiture money judgment in the amount of $175,467.05, representing all property constituting or derived from proceeds traceable to the commission of the offense alleged in Count 1 to which he pleads guilty.

2.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third person;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.


_____
RACHAEL A. HONIG
Acting United States Attorney

CASE NUMBER:  21-

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

ROCCO CAMMALLERI

INFORMATION FOR
18 U.S.C. §§ 1349 and 371

RACHAEL A. HONIG
ACTING U.S. ATTORNEY, NEWARK, NEW JERSEY

CHRISTINA O. HUD
R. DAVID WALK, JR.
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-5026

USA-48AD8
(Ed. 1/97)